Robert B. Dresser and Ruth G. Dresser, v. Commissioner.
Dresser v. Commissioner
Docket No. 50192.
United States Tax Court
T.C. Memo 1956-54; 1956 Tax Ct. Memo LEXIS 241; 15 T.C.M. (CCH) 242; T.C.M. (RIA) 56054; March 7, 1956
*241 Edward F. Hindle, Esq., 525 Cole Avenue, Providence, R.I., for the petitioners. Paul J. Henry, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the income tax of petitioners in the amount of $3,354.32 for the year 1950. The sole issue is: What was the fair market value of a gift of an estate in land made by petitioner, Robert B. Dresser, to the Town of Southbridge, Massachusetts, in 1950? Another issue relating to the deductibility of certain charitable contributions totalling $237 has been settled by concessions made by the parties. Findings of Fact The petitioners, husband and wife, are residents of Providence, Rhode Island. They filed a joint income tax return for the calendar year 1950 with the then collector of internal revenue for the district of Rhode Island. Robert B. Dresser will hereinafter be referred to as the petitioner. During the year 1949, and many years prior thereto, a trust created by J. Cheney Wells in 1921 owned some property fronting on Main Street in the Town of Southbridge, Massachusetts. The property was located on the northerly side of Main Street, starting at the corner *242 of Walnut and Main Streets and extending in a westerly direction approximately 246 feet. The area of the property was approximately 70,000 to 72,000 square feet. It will hereinafter be referred to as the trust property. The trustees of the J. Cheney Wells Trust in 1949 were the Second National Bank of Boston and Leon M. Little. The trust property was located not over 1,000 feet from the main business section of Southbridge which was also located on Main Street. Zoning restrictions limited the use of the property to residential purposes, except residences for occupancy by more than two families. In 1948 a house on the trust property was razed and the trustees discussed the possibility of having the property rezoned in order to sell it. They thought that a good sale could be made and they had an offer to purchase the property for $29,500 which was contingent upon its being rezoned as a general business district. They were anxious to sell the property because it was unproductive real estate and maintenance expenses and taxes were about $1,000 a year after the house was razed. It was generally known in Southbridge that the trustees wanted to sell the trust property. In January 1949, *243 a petition filed to have the trust property and certain other adjacent property on Main Street rezoned as a general business district was denied. The opposition to the approval of the petition was led by Dr. Richard Dresser, brother of petitioner, because the Dressers had a family homestead located on the opposite side of Main Street from the trust property and wanted to preserve that section as a residential section. In the latter part of 1949 the petitioner conceived the idea of purchasing the trust property from the J. Cheney Wells Trust and of giving it to the Town of Southbridge for park purposes, thus securing protection for the family homestead. In January 1950 he started negotiating for the purchase of the trust property. He told the trustees that he would like to buy it and that he intended to give it to the town for park purposes. He then offered to pay $15,000 for the property, plus another strip of land adjacent thereto which was owned by the Wells family but not held by the trust. The trustees did not accept this offer and told petitioner they would sell the trust property for $15,000. The negotiations were concluded on April 27, 1950. On that date petitioner purchased *244 the trust property from the trustees for $15,000. The deed was recorded in Worcester on May 2, 1950, and is dated April 27, 1950. On May 3, 1950, petitioner paid the Title Guarantee Company of Rhode Island $238.50 for a title policy. On August 2, 1950, petitioner paid the above-named trustees $518.48, which was petitioner's share of the Southbridge taxes for 1950. These taxes became a lien on the property January 1, 1950, and were, therefore, not deductible by petitioner in his income tax return as taxes paid by the petitioner. These three items total $15,756.98, which constitutes the cost of the property to petitioner. By deed dated December 20, 1950, delivered thereafter, and recorded in the Worcester District Registry of Deeds December 26, 1950, petitioner conveyed a portion of the above land to the Town of Southbridge. This conveyance to the Town of Southbridge was: "* * * for the following exclusively public purposes, namely, to be used and maintained by said Town of Southbridge as a public park to be known in memory of my brother, Henry C. Dresser, as 'Dresser Memorial Park', or at the option of said Town as the site of a Town Hall, or Municipal Auditorium, to be *245 known as 'Dresser Memorial Hall', but in no event as a schoolhouse, with a right, however, to use the rear portion of said premises, bounding on the railroad right of way of the New York, New Haven and Hartford Railroad Company, and extending southwesterly therefrom a distance not exceeding one hundred forty (140) feet, as a parking lot for automobiles of those visiting the park, the Town Hall, or the Municipal Auditorium, as the case may be; "Provided, Always, and this conveyance is made upon the express condition that the aforedescribed premises shall at all times be used and maintained by said Town for the purpose or purposes aforesaid; and if said Town shall at any time fail to observe any of said conditions, then this conveyance shall to all intents and purposes be null and void and the estate hereby conveyed shall revert to and vest in me, the said Robert B. Dresser, and my heirs or assigns, and it shall be lawful for me, or my heirs or assigns, to re-enter upon the aforedescribed premises." The land conveyed to the Town of Southbridge was approximately two-thirds of the land purchased by petitioner. In the joint income tax return for 1950 filed by him and his wife, a deduction *246 of $22,904 was claimed for "Gift of Real Estate to Town of Southbridge, Mass." In determining the deficiency the respondent determined that the value of the gift was $10,504.65, and disallowed $12,399.35 of the amount claimed as a deduction. The amount allowed as a deduction, $10,504.65, represents two-thirds of the purchase price of $15,756.98. At the time of the sale the trustees felt they had enough information regarding the value of the trust property without incurring the expense of a special appraisal, and they did not get such an appraisal. The only offer to purchase the trust property, after the petition for rezoning was denied, was made by the petitioner. They felt that the failure to get the property rezoned hurt their chances of obtaining a buyer and that they were getting all that they could get for the trust property when they sold it to petitioner for $15,000. They were not under any compulsion to sell the property and would not have sold it for a price which they thought was less than its fair market value. There was no increase in the fair market value of the property between the date of acquisition by petitioner and the date of his gift to the Town of Southbridge. *247 The fair market value of the property given by petitioner to the Town of Southbridge, Massachusetts, in 1950, was not in excess of $10,504.65 at the time of the gift. Opinion RAUM, Judge: The petitioner contends that the value of the gift of land made by him to the Town of Southbridge was between $22,000 and $36,900. In support of this contention he relies principally upon two sales and the testimony of two witnesses. One of the sales was made in 1950 to the Worcester County Electric Company of property located 156 feet to the west of the trust property. The purchase price was $50,000 or $200 per front foot. Before this property was conveyed to the company it was rezoned for retail business purposes. The other sale was made to the New England Telephone & Telegraph Company in 1946 of property located 406 feet to the west of the trust property. The purchase price was $40,000 or $285 per front foot. This property was zoned for commercial purposes. One witness for petitioner expressed the opinion that the fair market value of the trust property for commercial purposes was $36,900, and for residential purposes was $22,000 to $25,000. The other expressed the opinion that the fair *248 market value for commercial purposes was $36,000, and for residential purposes $24,000. Both witnesses stated that there was no change in the value of the property between April 1950, when petitioner purchased it, and December 1950, when he made the gift to the Town of Southbridge. They also testified that the commonly accepted method of valuing property on Main Street in Southbridge is on the basis of front footage. We have considered the foregoing evidence and all other evidence in the record, and have come to the conclusion that the respondent did not err in determining that the fair market palue of the gift was not in excess of $10,504.65. That was the amount paid by petitioner in an arm's-length transaction for two-thirds of the trust property. The property was zoned for residential purposes at the time he purchased it and at the time he made the gift. This restriction on its use, which the trustees had tried to have removed without success, caused the property to be a "white elephant" to the trust and unattractive to purchasers. The evidence discloses that the trustees made every effort to obtain the best possible price for the property. We are convinced that the price paid *249 by petitioner, after negotiations which lasted over a period of three months, constitutes the best evidence of the fair market value of the property at the time of the purchase and at the time of the gift. Because of further restrictions on the use of the property, set forth in the deed of December 20, 1950, and the possibility that the property would revert to petitioner or his heirs if such restrictions were not observed, the respondent could have determined that the value of the gift was less than $10,504.65. Cf. J. T. Fargason, 21 B.T.A. 1032, 1038. The respondent did not make such a determination. The amount of $10,504.65 allowed by him as a deduction was, therefore, in excess of, and not less than, the fair market value of the gift. Decision will be entered under Rule 50.